IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LANDMARK AMERICAN INSURANCE
COMPANY,

    Plaintiff/Counter-Defendant,

ARCH INSURANCE GROUP,

    Intervenor/Plaintiff/Counter-Defendant,

v.                                                                 Case No. 3:05cv401/LAC

MOULTON PROPERTIES, INC.,
MOULTON BROTHERS, INC., and
THE MOULTON TRUST,,

    Defendant/Counter-Plaintiffs,
_____/

**O R D E R**

THIS CAUSE comes before the Court on four motions to dismiss filed by Plaintiff/Counter-Defendant Landmark American Insurance Company ("Landmark") (doc. 174), Intervenor/Plaintiff/Counter-Defendant Arch Insurance Group ("Arch") (doc. 173), Counterclaim Defendant RSUI Group, Inc. ("RSUI") (doc. 187), and Counterclaim Defendant Peachtree Special Risk Insurance Brokers, LLC ("Peachtree") (doc. 188).

Collectively, these Defendant insurance companies seek dismissal of the second amended counterclaim (doc. 150) filed by Defendant/Counter-Plaintiff Moulton Properties, Inc., et al., ("the Moultons") in all aspects save Count One, the breach of contract claim levied against Landmark and Arch . The Moultons have filed responses in opposition.

## *I. Background*

This action concerns ten properties owned by the Moultons for which they sought recovery under an insurance policy for damages incurred by Hurricane Dennis. Landmark and Arch denied coverage under the policy based upon alleged misrepresentations regarding the state of repair of those properties following Hurricane Ivan's arrival the year before and the resolution of the related insurance claim. Specifically, Landmark and Arch claimed that repairs to three of the Moultons' properties were not completed before Hurricane Dennis arrived, which under a provision in their insurance policies[1] nullified their insurance claim. Landmark and Arch also stated that misrepresentations were made to them regarding the status and the amount of the claim the Moultons' had made under a policy they owned with a previous insurer during Hurricane Ivan.

In their counterclaim, the Moultons assert that Peachtree and RSUI were at fault for these alleged misrepresentations because, when they summarized the underwriting information to Landmark and Arch (as was their task), they failed to include accurate

---

[1] Landmark had issued a policy to the Moultons worth five million dollars, while Arch issued an "excess policy" to the Moultons for over twenty-seven million.

descriptions of the status of repairs.[2] The Moultons additionally assert that this failure was not in keeping with the procedural standards of these companies for underwriting policies. Further, the Moultons allege that Landmark and Arch, rather than requesting relevant information regarding the status of repairs or damages on the properties in question, simply signed off on the policy. Following the Moultons' filing of their claim for damages caused by Hurricane Dennis, all four companies, the Moultons allege, arranged a meeting in Atlanta, Georgia, where they devised a way to deny coverage under the policy.

As amended, the counterclaim now asserts causes of action for 1) breach of contract against Landmark and Arch based on denial of coverage under the policy; 2) negligence against Peachtree for failing to convey the proper information regarding the status of repairs and for failing to follow their own underwriting procedures; 3) negligence against RSUI for relying on Peachtree's improper summary and relaying the information to Landmark without further inquiry, in contravention of its own procedures; 4) fraud in the inducement against all four insurance companies for awarding the Moultons a policy under which coverage would later be denied based upon the alleged misrepresentations; and 5) civil conspiracy against all four companies based on their post-loss discussions in which they determined how they could deny coverage to the Moultons.

---

[2] The Moultons do not agree with Landmark and Arch's assessment of the extent of the pre-existing damages on their properties, claiming for instance that only minor, cosmetic repairs remained.

## *II. Standard*

A motion to dismiss under Rule 12(b)(6) is designed to eliminate counts or complaints that fail to state a claim upon which relief may be granted. As such, this Court must accept all allegations in the complaint as true and construe those allegations in the light most favorable to Plaintiffs. *See Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997). A complaint may not be dismissed with prejudice for failure to state a claim unless it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *See id.* "[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994 (11th Cir. 1983). However, this does not mean that the Court should "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## *III. Fraud in the Inducement*

The insurance companies uniformly contend that the Moultons' claim of fraudulent inducement is subject to dismissal under the economic loss rule, which provides that "[w]here the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action." *Behrman v.*

*Allstate Ins. Co.,* 388 F.Supp. 2d 1346, 1349 n.4 (S.D. Fla. 2005) (quoting *Eye Care Int'l Inc. v. Underhill*, 92 F.Supp.2d 1310, 1315 (M.D. Fla. 2000)). Underlying this rule is the maxim that contract law is better suited to resolve claims of pure economic loss than are tort principles. *See Medalie v. FSC Securities Corp.*, 87 F.Supp.2d 1295, 1299-1300 (S.D. Fla. 2000) (citing *Florida Power & Light Co. v. Westinghouse Elec.*, 510 So.2d 899 (Fla. 1987) and *AFM Corp. v. Southern Bell*, 515 So.2d 180 (Fla. 1987)). "Consequently, a party to a contract may not pursue a claim in tort for solely economic losses unless the party breaching the contract has committed a tort which is distinguishable from or independent of the breach of contract." *Id.* at 1300. "[W]hen the alleged duty breached is derived from the contractual relationship it cannot form the basis for a separate and distinct tort." *Id.* (citing *Interstate Sec. Corp. v. Hayes Corp.*, 920 F.2d 769 (11th Cir. 1991)).

A claim of fraud in the inducement, when distinct from the contract claim, is not subject to the economic loss rule. If the fraud results from misrepresentations that cause the complaining party to enter into a transaction, such fraud is fraud in the inducement:

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely – which normally would constitute grounds for invoking the economic loss doctrine – but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior....
>
> The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction . . . between fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1240 (Fla. 1996) (quotation omitted); *see also D & M Jupiter, Inc. v. Friedopfer*, 853 So.2d 485, 487-88 (Fla. 4th DCA 2003).

Thus, fraudulent inducement normally "occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract." *HTP, Ltd.*, 685 So.2d at 1239. Conversely, where the injury stems from the "failure to perform the heart of the agreement," the economic loss doctrine bars the action. *Allen v. Stephan Co.*, 784 So.2d 456, 458 (Fla. 4th DCA 2000); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F.Supp.2d 1310, 1318-19 (S.D. Fla. 2002) (collecting cases).

Because the Moultons' claim of fraud in the inducement is wholly derived from the insurance contract, the Court finds the claim to be subject to the economic loss rule. The Moultons cite to no extraneous statement or representation made by the insurance companies that induced them to enter the contract. In fact, seemingly aware of this inadequacy, the Moultons attempt to take the fact that they were provided coverage and characterize it as a "statement" from the insurers that coverage existed when it did not – or more correctly when the insurers planned to deny coverage should a claim be made in the future. This "statement," even if it could be considered as such, is the epitome of entanglement with the contract. It is clear from the Moultons' counterclaim that the essence of the claimed fraud is the insurance companies' failure to perform under the insurance contract. Since the Moultons' claim derives solely from the contractual relationship, it fails to meet the

qualifications outlined by the Florida Supreme Court in *HTP, Ltd.* to except it from the grasp of the economic loss doctrine.

It bears noting that the Moultons allege other misrepresentations, namely that Peachtree and RSUI made false statements regarding the status of damages/repairs to the properties in question and the amount of damages claimed or collected from the Moultons' previous insurer in the aftermath of Hurricane Ivan.  However, these alleged misrepresentations were not made to the Moultons but rather to Landmark and Arch.  As such, they cannot form the basis for any fraudulent inducement of the Moultons to enter the contract.  If anything, these statements deceived Landmark and Arch to issue the insurance policies under circumstances in which they would not ordinarily have done so.

Also noteworthy is the fact that, while the Moultons may on the surface allege that the insurance companies initiated a plan to deny coverage from the inception of the policy, all that is alleged with any particularity are actions taken by the insurers *after* Hurricane Dennis, mainly, that they met in Atlanta to discuss the Moultons' claim.  In fact, the Moultons accuse the insurance companies of

> attempting to play "Monday Morning quarterback" in an improper manner – to attempt to void both the Landmark Policy and the Arch Policy – that seemed, with after the fact, 20/20 hindsight, to be bad gambles for each of these insurers (only after a loss occurred, and a proper claim was made for millions of dollars by the Moultons), by falsely attempting to uncover and/or assert some obscure facts not solicited by any of them, or their agents, at the time said insurance policies were each bound and ultimately issued by these insurers.

Doc. 150 at ¶ 38. This is the heart of the Moultons' fraud claim, and it does not comport with a claim of fraud in the inducement, which by its nature deals with deceptive action being taken pre-contract. To the degree the Moultons' allegations are sufficient to state a valid claim for relief, it is only as a claim of bad faith refusal to settle, which, as the parties agree, is unripe.

### *IV. Civil Conspiracy*

Likewise, the Moultons' claim of civil conspiracy cannot survive the economic loss doctrine. As with a claim of fraud in the inducement, where a claim of civil conspiracy is "inextricably intertwined" with a breach of contract claim, and the alleged harm is indistinct from what is sought in contract claim, contract law is the sole avenue for relief. *See GEICO Cas. Co. v. Beauford*, ___ F.Supp.2d ___, 2007 WL 521928 at *3 (M.D. Fla. Feb. 15, 2007); *Behrman v. Allstate Ins. Co.*, 388 F.Supp.2d 1346, 1350 (S.D. Fla. 2005); *see also Osheroff v. Rauch Weaver Millsaps & Co.*, 882 So.2d 503, 506-507 (Fla. 4th DCA 2004).

The Moultons allege that the insurers conspired to injure them when they met to discuss and ultimately reject the Moultons' policy claim. As with their claim of fraud in the inducement, this civil conspiracy claim is synonymous with the breach of contract claim. It again bears noting that the thrust of the inducement and conspiracy claims is simply to attach an illicit motive to the insurers' decision to deny the Moultons' policy claim – all in the aftermath of Hurricane Dennis. Although the Moultons attempt to adduce a bad faith motive

or plan occurring at the time the contract was being formed, the allegations do not support this. As stated earlier, the allegations against Peachtree and RSUI tend to establish only that those companies misinformed Landmark and Arch, not that they formed any overarching plan to never provide coverage for the Moultons. Once again, because the only pertinent allegations concern actions taken after the Moultons' filed a policy claim, at best these allegations support a claim for bad faith failure to settle.

### *V. Negligence*

Having dispatched the Moultons's claims of fraud in the inducement and civil conspiracy, the Court now finds the claims of negligence against RSUI and Peachtree are also due to be dismissed. It is well established that a cause of action for negligence requires as elements that 1) the defendant owed the plaintiff a duty, 2) the defendant breached that duty, 3) the breach was the proximate cause of the plaintiff's injuries, and 4) the plaintiff suffered damages as a result of those injuries. *See Vincent v. C.R. Bard, Inc.*, 944 So.2d 1083, 1085 (Fla. 2d DCA 2006) (citing *Cintron v. Osmose Wood Preserving, Inc.*, 681 So.2d 859 (Fla. 5th DCA 1996) and *Simon v. Tampa Elec. Co.*, 202 So.2d 209 (Fla. 2d DCA 1967)). While it is therefore fundamental that RSUI or Peachtree have a duty of care over the Moultons, the Moultons fail to identify one. The counterclaim emphasizes that RSUI and Peachtree acted as agents for Landmark and Arch, yet, as has already been recounted, their only duty of care, if any, lies in the underwriting information they provided to Landmark and

Arch. Absent some indication that RSUI and Peachtree acted as agents for the Moultons or acted as fiduciaries, this hardly establishes the necessary duty. As RSUI points out in its motion, contrary to what the Moultons imply, no duty is ascertainable simply from an insurer's deviance from its own internal underwriting procedures. *See Becks v. Emery-Richardson, Inc.*, Nos. 86-6866, 87-1554, 1990 WL 303548 at *26 (S.D. Fla. Dec. 21, 1990).

Even if Moultons could establish a duty of care on the part of RSUI and Peachtree, it would have to be in the nature of a negligent procurement action, which would align these two companies with Fisher-Brown, Inc., which the Court earlier dismissed from this action on grounds that claims of negligent procurement are unripe. Nonetheless, the Court does not find that the Moultons have established that RSUI or Peachtree maintained the specific duty to procure an appropriate insurance policy for the Moultons.

### *VI. Punitive Damages*

The Moultons' tort claims having been dismissed, it is evident that their claim for punitive damages must also be dismissed. Only the breach of contract claim remains, under which punitive damages are unavailable. *See Lewis v. Guthartz*, 428 So.2d 222, 223 (Fla. 1982). The Moultons acknowledge as much, stating that they punitive damages were not sought in conjunction with the contractual claim. Doc. 95 at 11-12.

The parties also spar over whether any type of bad faith damages should be allowed, but the Court declines to resolve this issue on ripeness grounds since such claims for relief

are contingent upon the success of the Moultons' contractual claim. Similarly, the insurers contend that the Moultons' counterclaim makes numerous inappropriate allegations about bad faith actions taken on their part. The Moultons in response differentiate between allegations of bad faith made in the legal sense versus those made in layman's terms. Since most of these allegations are related to the Moultons' now-dismissed tort claims, the Court's order that the Moultons amend their counterclaim should serve as an impetus for the Moultons to excise the offending allegations or remarks.

Accordingly, the Court's ruling in this matter may be summarized as follows, and **IT IS HEREBY ORDERED**:

1. The Motions To Dismiss filed by Plaintiff/Counter-Defendant Landmark American Insurance Company (doc. 174), by Intervenor/Plaintiff/Counter-Defendant, Arch Insurance Group (doc. 173), Counterclaim Defendant, RSUI Group, Inc. (doc. 187), and Counterclaim Defendant Peachtree Special Risk Insurance Brokers, LLC (doc. 188) are hereby **GRANTED** to the extent that Counts II through V of the Second Amended Counterclaim filed by Defendant/Counter-Plaintiff Moulton Properties, Inc., et al., are hereby **DISMISSED**. The motions are **DENIED** in all other respects.

2. All claims against them having been dismissed, Counterclaim Defendants RSUI Group, Inc., and Peachtree Special Risk Insurance Brokers, LLC, are hereby **DISMISSED** from this cause of action.

3. The motion and claim for punitive damages by Defendant/Counter-Plaintiff Moulton Properties, Inc., et al., is **DISMISSED**.

4. The Motion to Correct the Scrivener's Error (doc. 132) filed by Intervenor/Plaintiff/Counter-Defendant, Arch Insurance Group is **DENIED**. The parties are encouraged to meet and resolve who are the correct entities in this lawsuit. It is clear, however, that the instant issue does not amount to a simple clerical mistake.

5. Intervenor/Plaintiff/Counter-Defendant, Arch Insurance Group's Motion to File Reply Brief (doc. 135) is **DENIED** as moot.

6. Within **TWENTY (20) DAYS** from the date of this Order, Defendant/Counter-Plaintiff Moulton Properties, Inc., et al., shall file a Third Amended Counterclaim that conforms to this Order.

**ORDERED** on this 15th day of May, 2007.

                                                     s/ *L.A. Collier*
                                                     Lacey A. Collier
                                         Senior United States District Judge